PROB 12C
(Rev.2011)

# United States District Court
## for
## Middle District of Tennessee

## Superseding Petition for Warrant for Offender Under Supervision
## [Supersedes Petition Filed as Docket Entry No. 74 ]

Name of Offender: <u>Kaylon Cunningham</u>    Case Number: <u>3:10-00209</u>

Name of Judicial Officer: <u>Honorable Aleta A. Trauger, U. S. District Judge</u>

Date of Original Sentence: <u>May 9, 2012</u>

Original Offense: <u>18 U.S.C. § 924(a)(1)(A) Making a False Written Statement and Representation in Connection With the Acquisition of a Firearm</u>

Original Sentence: <u>5 years' probation</u>

Type of Supervision: <u>Probation</u>    Date Supervision Commenced: <u>May 9, 2012</u>

Assistant U.S. Attorney: <u>Joseph P. Montminy</u>    Defense Attorney: <u>Sumter L. Camp</u>

---

**PETITIONING THE COURT**

____ To issue a Summons.
____ To issue a Warrant.
**X** To Consider Additional Violations/Information

---

**THE COURT ORDERS:**
☐ No Action
☐ The Issuance of a Warrant:
    ☐ Sealed Pending Warrant Execution
      (cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☒ Consideration of Additional Violations/Information
☐ Other

Considered this 25th day of June, 2015,
and made a part of the records in the above case.

_____
Aleta A. Trauger
United States District Judge

I declare under penalty of perjury that the foregoing is true and correct. Respectfully submitted,

_____
James Foster
U.S. Probation Officer

Place      <u>Nashville, TN</u>

Date      <u>June 25, 2015</u>

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. 74, has been amended as follows:

 Violation No. 3 - was amended to include additional information including the disposition of previously reported charges.

 Violation No. 4 - was amended to include additional information.

The probation officer believes that the offender has violated the following condition(s) of supervision:

Violation No.   Nature of Noncompliance

1.   **The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.**

 The defendant violated this condition in that he failed to file written monthly reports by the fifth of each month, as directed by the probation officer. The defendant last filed a regular monthly report in June 2013. He was directed to file his reports on numerous occasions verbally and in writing. On August 14, 2014, the defendant reported to the probation office and submitted reports for the previous six months.

 The defendant further violated this condition in that he failed to report to the probation officer on July 23, 2014, as directed.

 The defendant was contacted, via telephone, on July 21, 2014, and directed to report on July 23, 2014. The defendant agreed to report but failed to do so. He was contacted on August 7, 2014, and directed to report the following day to submit to a drug test. The defendant agreed to report; however, he failed to do so. He explained that he experienced car trouble. The defendant reported on August 14, 2014, for his drug test, and no drug use was detected.

2.   **The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.**

 The defendant violated this condition in that he failed to notify the probation officer of questioning by law enforcement officers on two occasions. The incidents were discovered by the probation officer using automated record checks.

 On September 25, 2013, at 2:29 p.m., law enforcement officers reported to the defendant's place of employment, Kangaroo Express, to investigate a fraud. The defendant was suspected of writing himself money orders without paying for them. At that time, the defendant was questioned and released. His employment was then terminated by Kangaroo Express. Ultimately, the case was not prosecuted. The defendant failed to report this contact to the probation officer.

 On August 10, 2014, at 5:10 p.m., law enforcement officers reported to the defendant's place of employment, Walmart, to investigate a theft. The defendant was suspected of stealing a computer. At that time, the defendant was questioned, and he was issued a citation. The defendant failed to report this contact to the probation officer.

3. <u>The defendant shall not commit another federal, state, or local crime.</u>

**The defendant violated this condition as evidenced by his citation for Driving on a Revoked Drivers License (Rutherford County General Sessions Case No. 364419), which occurred on July 13, 2014.** According to court records, the defendant was stopped by law enforcement officials on July 13, 2014, because his vehicle had a headlamp out. At that time, it was discovered that the defendant's license was revoked.

**The defendant further violated this condition as evidenced by his citation for Theft Under $500 (Rutherford County General Sessions Case No. 365751), which occurred on August 10, 2014, in Murfreesboro, Tennessee.** According to Walmart personnel, the defendant, a temporary employee at Walmart, was observed concealing a laptop in his trousers and exiting the store without paying for the item. The laptop was valued at $348. Law enforcement officials interviewed the defendant and issued a citation.

**Mr. Cunningham was subsequently referred by the Rutherford County General Sessions Court to undergo a forensic evaluation to assess his competency to stand trial for Case No. 365751. After several delays due to a missed appointments, the evaluation was conducted at Volunteer Behavioral Health, in Murfreesboro, on April 16, 2015.** According to the report from that evaluation, a clinical psychologist determined that Mr. Cunningham suffers from intellectual deficits and mental illnesses including Recurrent Severe Depression, Panic Disorder, Post-Traumatic Stress Disorder, and Generalized Anxiety Disorder, but was competent to stand trial. The evaluator noted that the defendant's mental health issues do not render him unable to appreciate the nature and wrongfulness of the alleged offense, but appear to have produced a condition of diminished capacity in which there was no clear intent to commit the alleged offense.

**On the basis of the forensic evaluation, on May 21, 2015, the state court ordered that both cases be retired without court costs for 11 months and 29 days.** According to a representative of the Rutherford County General Sessions Court, Mr. Cunningham was referred to report to Providence Community Corrections (PCC), in Murfreesboro. However, a PCC representative reports no record of the defendant having done so.

4. <u>The defendant shall participate in a mental health program as directed by the United States Probation Office. The defendant shall pay all or part of the costs if the United States Probation Office determines the defendant has the financial ability to do so or has appropriate insurance coverage to pay for such treatment.</u>

The defendant violated this condition in that he failed to report for treatment as directed on the following dates: September 30, 2014, October 22, 2014, and November 5, 2014. **He did not resume treatment attendance until March 2015, but missed several appointments for a forensic mental health evaluation during that month. Although he subsequently attended that evaluation and all required appointments in April 2015, he has not contacted the treatment provider to schedule further appointments since May 1, 2015.**

<u>Compliance with Supervision Conditions and Prior Interventions</u>:
Mr. Kaylon Cunningham began his term of probation on May 9, 2012, and is currently scheduled to complete his term on May 8, 2017. **He resides with his fiancee in Murfreesboro, Tennessee, and has been employed at Warner Bros. Foundation Repair, in Nashville, Tennessee, since March 31, 2015.**

On July 12, 2012, the defendant reported to the Guidance Center for a mental health assessment. He was diagnosed with Bipolar II Disorder, Panic Disorder Without Agoraphobia, and Generalized Anxiety Disorder. The defendant was subsequently recommended to attend monthly one-on-one mental health treatment appointments, but was highly inconsistent in his attendance from one month to the next, and was on several occasions briefly hospitalized due to concerns regarding his mental health status. Notably, in August 2012, Mr. Cunningham had contact with officers of the Murfreesboro Police Department (MNPD) who conducted a safety check at a parking lot in Murfreesboro, Tennessee, where the defendant reported he was having suicidal ideations following an argument with his girlfriend. He was briefly hospitalized for a few days, stabilized, and released.

After several months wherein he missed all treatment appointments, leading the treatment provider to recommend that treatment be terminated due to Mr. Cunningham's apparent disinterest, the defendant voluntarily returned to therapy in April 2013, seeking treatment for feelings of anxiety and depression. However, his treatment attendance remained sporadic and, by September 2014, he stopped contacting the treatment provider to schedule further appointments. According to the treatment provider, one-on-one therapy sessions were subsequently discontinued because Mr. Cunningham's intellectually functioning appeared to have been impaired by some as-yet-unknown cause, such that the therapy sessions were not beneficial.

On November 25, 2014, Mr. Cunningham was again briefly hospitalized after contact with MPD officers who were dispatched to a parking lot in Rutherford County, following reports that he had been sitting at a bus stop for an extended period of time in a state of apparent emotional distress. Mr. Cunningham, who was reportedly rocking in his seat and barely able to speak, reported he could not recall how he came to be at that location, identified himself as suffering from Post-Traumatic Stress Disorder, and stated he had been prescribed psychiatric medication. When asked if he had taken that medication, Mr. Cunningham could not provide a clear response and was transported to a local hospital for further evaluation. He was discharged on November 26, 2015.

Between December 2014 and March 2015, several incidents occurred during which Mr. Cunningham appeared highly confused and disoriented. Following his November 2015 hospital discharge, the defendant claimed to the probation officer that he worked at Walmart as a security guard, although that employer reported Mr. Cunningham had never worked in that capacity. During a visit to the defendant's residence by the probation officer in January 2015, Mr. Cunningham's living space appeared extremely disorganized and cluttered, and he reported suffering from physical and mental health conditions for which he could provide no corroborative documentation, including Schizophrenia and oral cancer.

Mr. Cunningham was referred back to the Guidance Center to resume mental health treatment services, but when he reported there in March 2015, he stated he did not recognize his previous therapist or nurse practitioner. Furthermore, the defendant repeatedly advised that he had recently been visited at his apartment by a District Attorney and a previous probation officer. When told that his recollection of this event could not be accurate because the probation officer in question had transferred employment to another state several months prior, Mr. Cunningham reportedly became agitated and appeared very confused. The treatment provider, noting that the defendant's speech patterns and orientation to time and space appeared significantly impaired in comparison to his presentation prior to September 2014, determined that Mr. Cunningham should undergo neurological testing. Simultaneously, legal counsel representing the defendant in his then-pending state case scheduled Mr. Cunningham to undergo a competency evaluation. The defendant failed to appear for that evaluation on three occasions in March 2015, but during that period resumed treatment at the Guidance Center, where he attended medication and case management sessions throughout April 2015.

On March 26, 2015, Mr. Cunningham had contact with police when MPD officers reported to his employment location, Old Time Pottery, in response to reports that he had engaged in a verbal argument with a coworker. According to an incident report, the defendant had somehow blocked access to a female coworker's desk, leading to a heated verbal altercation between Mr. Cunningham and a male coworker. During that altercation, the defendant reportedly stated to the male coworker "I don't fight; if you touch me you better kill me," and "I will bring a hundred Gangster Disciples up here and no one will leave." The defendant held a small, opened pocket knife during the altercation, but reportedly did not make any threatening gestures with it, and the male coworker denied feeling threatened by Mr. Cunningham. When advised that his employment would be terminated due to this incident, the defendant reportedly began shaking, yelling, and rolling his eyes. He was questioned by a police officer regarding his mental health, alluded to sometimes hearing voices, and reported he was a patient at the Guidance Center. Mr. Cunningham's male coworker declined to press any charges and the defendant was transported by police to the Guidance Center. There, he reported to the treatment provider that his Post-Traumatic Stress Disorder had been triggered by witnessing a male coworker verbally threaten a female coworker, and claimed to have suffered a blackout during which he was unaware of any subsequent events until his admission to the Guidance Center.

In April 2015, Mr. Cunningham attended all required mental health appointments including a forensic mental health evaluation conducted on April 16, 2015. During that evaluation, the defendant denied any present suicidal ideations but admitted to a previous suicide attempt, during which he played Russian roulette with a loaded pistol. The evaluator noted that Mr. Cunningham appears to suffer from a condition which includes dissociative states wherein he is unaware of his whereabouts or circumstances. The report concludes that "although there is no indication that Mr. Cunningham's mental illness and intellectual deficit rendered him unable to appreciate the nature and wrongfulness of his alleged offense, there are indications that his disabilities produced a condition of diminished capacity in which there was no clear intent to commit the alleged offense." Consequently, the defendant was deemed competent to stand trial, but it was advised that any dispensation of his then-pending state case require Mr. Cunningham to obtain adequate and consistent mental health treatment.

Subsequent to his forensic mental health evaluation, the treatment provider initiated case management services for Mr. Cunningham which were intended to assist him in scheduling a neurological evaluation. He was scheduled to attend that evaluation immediately following an appointment at the Guidance Center on May 1, 2015. However, his mental health treatment providers and case worker have not heard from the defendant since that date, have been unable to reach him via telephone or residential contacts, and are uncertain whether or not he attended the neurological evaluation. However, when the probation officer visited Mr. Cunningham's residence on June 16, 2015, he claimed that he continued to attend regularly scheduled mental health treatment appointments at the Guidance Center and had undergone a neurological evaluation at a local hospital in June 2015. The probation officer instructed the defendant to provide a copy of the report from that evaluation, but the requested documentation has not yet been received. The probation officer and the treatment provider concur that Mr. Cunningham must immediately renew treatment attendance, with monthly appointments including one-on-one mental health treatment, medication management, and case management. However, the treatment provider and probation officer have previously found it very difficult to contact the defendant because he rarely answers his telephone and does not appear to have voicemail, which may likely hinder any efforts to schedule further appointments.

The probation officer has discussed these matters with Mr. Cunningham's federal public defender, who concurs that the defendant should undergo a neurological evaluation in order to ascertain whether or not he suffers from any significant neurological issues or deficits. Information from such an evaluation will enable the Guidance Center to assess Mr. Cunningham's ability to participate in and benefit from the treatment services, and to tailor treatment services to better meet his needs. To that end, the federal public defender has agreed to schedule and fund a neurological evaluation for Mr. Cunningham, and ensure the defendant attends that appointment.

**U.S. Probation Officer Recommendation:**
It is respectfully recommended that Mr. Cunningham attend a neurological evaluation and comply with any treatment recommendations made. This matter has been reported to Assistant U.S. Attorney Joseph P. Montminy, who concurs with the recommendation.

Approved: _____
          Britton Shelton
          Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. KAYLON CUNNINGHAM, CASE NO. 3:10-00209

**GRADE OF VIOLATION:** C
**CRIMINAL HISTORY:** I

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003    **PROTECT ACT PROVISIONS**

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | **Not more than 5 years** *18 U.S.C. § 924(a)(1)(D)* | **3 to 9 months** *U.S.S.G. §7B1.4(a)* | **No recommendation** |
| SUPERVISED RELEASE: | **Not more than 3 years** *18 U.S.C. § 3583(b)(2)* | **1 to 3 years** *U.S.S.G. §5D1.2(a)(2)* | **No recommendation** |

If the defendant violates a condition of probation at any time prior to the expiration or termination of a term of probation, the Court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a), to the extent that they are applicable, (1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or (2) revoke the sentence of probation and resentence the defendant under subchapter A, 18 U.S.C. § 3565(a).

**Guideline Policy Statements:** Upon a finding of a Grade C violation, the Court may revoke probation or supervised release or extend the term of probation or supervised release and/or modify the conditions of supervision, U.S.S.G. § 7B1.3(a)(2).

Respectfully Submitted

James Foster
U.S. Probation Officer

Approved:

Britton Shelton (for)
Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. Defendant   Kaylon Cunningham

2. Docket Number (Year-Sequence-Defendant No.)   3:10-00209

3. District/Office   Middle District of Tennessee

4. Original Sentence Date   May 9, 2012
   *month day year*

(if different than above):

5. Original District/Office   Same as above

6. Original Docket Number (Year-Sequence-Defendant No.)   Same as above

7. List each violation and determine the applicable grade (see §7B1.1):

| Violation(s) | Grade |
|---|---|
| Failure to report as directed | C |
| Failure to notify concerning contact with law enforcement | C |
| New misdemeanor crimes | C |
| Failure to comply with mental health treatment | C |

8. Most Serious Grade of Violation (see §7B1.1(b))   | C |

9. Criminal History Category (see §7B1.4(a))   | I |

10. Range of Imprisonment (see §7B1.4(a))   | 3 to 9 months |

11. Sentencing Options for Grade B and C Violations Only (Check the appropriate box):

   ■ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

   (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

   (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available. Any term imposed upon revocation shall be ordered to be served consecutively to any sentence of imprisonment, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation. §7B1.3(f).

Defendant: Kaylon Cunningham

12. Unsatisfied Conditions of Original Sentence

    List any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

    Restitution($): 0          Community Confinement: 0

    SA($):         0          Home Detention:        0

    Other:         0          Intermittent Confinement: 0

13. Supervised Release

    If supervision is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

    Term: _____

    The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original sentence.

    Period of supervised release to be served following release from imprisonment:_____

14. Departure

    List aggravating and mitigating factors that may warrant a sentence outside the applicable range of imprisonment:

15. Official Detention Adjustment (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission, 1331 Pennsylvania Avenue, N.W. Suite 1400, Washington, D.C. 20004, Attention: Monitoring Unit

1/11/90